******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* HENNY JORDAN BEY
## (AC 48215)

Elgo, Clark and Westbrook, Js.

*Syllabus*

The plaintiff in error, A Co., a bail bonds company, filed a writ of error challenging the trial court's denial of its motion for order requesting that the court either order the defendant in error, the state of Connecticut, to enter the rearrest warrant for the criminal defendant, B, who had been located in Arizona, into the National Crime Information Center (NCIC) database or release A Co. from its obligations on surety bail bonds that it had executed to obtain B's release from custody. A Co. claimed, inter alia, that the court erred in concluding that the state's refusal to enter B's rearrest warrant into the NCIC database did not constitute good cause to release A Co. from its surety bond obligations pursuant to the rule of practice (§ 38-23) and statute (§ 54-65c). *Held*:

The trial court properly determined that A Co. failed to establish good cause to release it from its surety bond obligations pursuant to Practice Book § 38-23 because the state's refusal to enter B's rearrest warrant into the NCIC database did not constitute an act of law for purposes of the rule set forth in *Taylor* v. *Tainto*r (83 U.S. (16 Wall.) 366), as the state did not remove B from Connecticut or prevent him from appearing in court.

The trial court properly determined that A Co. failed to establish good cause to release it from its surety bond obligations pursuant to § 54-65c, as A Co. did not allege or prove that B had been detained or incarcerated in another state as required under the statute, and this court declined A Co.'s invitation to read into § 54-65c an additional, alternative ground that would entitle a bail bondsman to release from its surety bond obligations upon a showing that the state has declined to enter a defendant's rearrest warrant into the NCIC database, as such an interpretation would be contrary to well settled tenets of statutory construction requiring this court to interpret a statute according to its plain language and to avoid reading into a clearly expressed statute provisions or requirements not expressed in the language of the statute.

The trial court properly determined that it lacked the authority to order the state to enter B's rearrest warrant into the NCIC database pursuant to statute (§ 29-164f), as that statute contains no language authorizing a court to do so, and, if the legislature had intended to vest such authority in the trial court, it easily could have done so expressly.

Argued November 20, 2025—officially released July 21, 2026

*Procedural History*

Writ of error from the decision of the Superior Court in the judicial district of Stamford-Norwalk, geographical

area number one, *Hon. Gary J. White*, judge trial referee, denying the plaintiff in error's motion for order seeking, inter alia, release from its obligations on certain surety bonds. *Writ of error denied*.

*William B. Westcott*, for the plaintiff in error.

*Timothy F. Costello*, supervisory assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's attorney, and *Sydelle Exantus*, assistant state's attorney, for the defendant in error.

*Opinion*

CLARK, J. In this writ of error, the plaintiff in error, Aces Bail Bonds (Aces), claims that the trial court improperly denied its motion for order requesting that the court either order the defendant in error, the state of Connecticut (state), to enter the rearrest warrant for the criminal defendant, Henny Jordan Bey (defendant), into the National Crime Information Center (NCIC) database[1] or release Aces from its obligations on certain surety bail bonds. Specifically, Aces claims that the trial court erred in concluding that (1) the state's refusal to enter the defendant's rearrest warrant into the NCIC database did not constitute good cause to release Aces from its surety bond obligations pursuant to Practice Book § 38-23 and General Statutes § 54-65c,[2] and (2) it lacked the authority to order the state to enter the defendant's rearrest warrant into the NCIC database pursuant to General Statutes § 29-164f and the court's

---

[1] "The NCIC database is maintained by the [Federal Bureau of Investigation] and aggregates criminal justice information from a variety of sources. Some files in the database contain information about individual persons and are known as person files. Other files contain records regarding stolen property. Law enforcement agencies routinely check NCIC records to obtain information concerning persons in custody or under investigation." *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 58 n.4, 52 A.3d 636 (2012).

[2] Although § 54-65c has been amended since the events at issue; see Public Acts 2025, No. 25-25, § 2; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

inherent bail authority. We reject Aces' claims and deny the writ of error.

The record reveals the following undisputed facts. On January 13, 2023, the police arrested the defendant and charged him with interfering with an officer in violation of General Statutes § 53a-167a, failure to move over and reduce speed when approaching an emergency vehicle in violation of General Statutes § 14-283b (b), operating a motor vehicle without a license in violation of General Statutes § 14-36 (a), failure to carry a registration certificate and insurance card in violation of General Statutes § 14-13, and failure to wear a safety belt in violation of General Statutes § 14-100a (c) (1). Aces executed a surety bail bond in the amount of $10,000 to obtain the defendant's release from custody.

On January 25, 2023, the defendant was arrested again and charged with interfering with an officer in violation of § 53a-167a, refusal to show a license or registration certificate in violation of General Statutes § 14-217, operating a motor vehicle without a license in violation of § 14-36 (a), and parking within ten feet of a fire hydrant in violation of General Statutes § 14-251 (a). Aces executed a surety bail bond in the amount of $20,000 to obtain the defendant's release from custody.

In April 2024, after the defendant failed to appear in court, the trial court issued a rearrest warrant and ordered the surety bonds totaling $30,000 forfeited. On September 13, 2024, Aces filed a motion for order pursuant to Practice Book § 38-23 and General Statutes §§ 29-164f, 54-65a, and 54-65c, requesting that the court either order the state to enter the defendant's rearrest warrant into the NCIC database or release Aces from its obligations under the surety bonds. In its motion, Aces represented that it had located the defendant and that the defendant was residing in Arizona. It argued that placing the rearrest warrant into the NCIC database would "enable local authorities to detain the defendant . . . [and allow Aces] to take custody and fulfill its civil obligation to return the defendant to Connecticut . . . ."

The trial court heard oral argument on Aces' motion on October 8, 2024. The state objected to the motion. After hearing from the parties, the court denied the motion from the bench, stating: "I'm not too sure that I do have the authority to order the state to do anything when it comes to extraditing somebody or making it easier for the bondsmen to carry out an obligation the bondsmen incurred. So, I'm going to sustain the state's objection." This writ of error followed.

I

Aces first claims that the trial court erred in denying its motion for order because it established good cause pursuant to §54-65c and Practice Book §38-23 to release it from its surety bond obligations. Specifically, it argues that the state's refusal to enter the defendant's rearrest warrant into the NCIC database established good cause to release it from its bond obligations because **(1)** the state's refusal made the defendant unavailable by virtue of an act of law, which is sufficient to establish good cause pursuant to Practice Book §38-23, and **(2)** the state would not "furnish the conditions precedent to ever allow [Aces] to establish the circumstances that would lead to relief [under] §54-65c." We conclude that the trial court properly determined that Aces failed to establish good cause under §54-65c and Practice Book §38-23.

A

We first address Aces' claim that the trial court erred in concluding that the state's refusal to place the defendant's rearrest warrant in the NCIC database did not constitute an "act of law" for purposes of establishing good cause pursuant to Practice Book §38-23.

Practice Book §38-23 provides: "Where bail has been posted by a bondsman or other surety, such bondsman or surety shall not be relieved of any obligation upon the bond except with the permission of the judicial authority and for good cause shown." "Although [§38-23] does

not specify the exact legal test to be used by a court in determining good cause, this state has followed the common-law rule set forth in *Taylor* v. *Taintor*, **[83 U.S. (16 Wall.) 366, 366, 21 L. Ed. 287 (1872)]**, which affirmed the decision of our Supreme Court in *Taintor* v. *Taylor*, **36 Conn. 242, 255 (1869),** that a surety will be relieved of its obligation on a bail bond only when the performance of the condition **[of the bond]** is rendered impossible by the act of God, the act of the obligee, or the act of the law **(***Taylor* rule).**"[3]** (Internal quotation marks omitted.) *State* v. *Garcia*, 178 Conn. App. 557, 565–66, 176 A.3d 575 (2017). "Because the release of a bail surety pursuant to . . . §38-23 is not discretionary but, rather, requires the trial court's application of the rule in *Taylor* to the facts as found by the court, our review of the trial court's application of the law is plenary." *State* v. *Sheriff*, 301 Conn. 617, 627 n.6, 21 A.3d 808 (2011).

"In *Taylor*, the criminal defendant and principal on the bond, Edward McGuire, was released after posting bond in a Connecticut criminal court. . . . He later voluntarily left Connecticut for New York and failed to appear in court as ordered. . . . Meanwhile, Maine issued a governor's requisition to New York to take custody of McGuire so he could be prosecuted on a pending burglary charge in Maine, and New York delivered him to proper officers of the state of Maine. . . . Neither of the two sureties on the bond knew, when they entered into the recognizance, that McGuire had a burglary charge pending in Maine. . . . After McGuire was sent to Maine, he was convicted and sentenced to a term of incarceration of fifteen years. . . . During his confinement, the Connecticut court forfeited

---

[3]To the extent that Aces invites us to expand the legal test for good cause under Practice Book §38-23 beyond the considerations enunciated in the *Taylor* rule, we reject that invitation on the basis of binding precedent. See *State* v. *Sheriff*, 301 Conn. 617, 621–22, 626–27, 21 A.3d 808 (2011) (declining to expand *Taylor* rule to determine good cause under §38-23); *State* v. *Garcia*, 178 Conn. App. 557, 570, 176 A.3d 575 (2017) (declining to add prong to *Taylor* rule).

the bond." (Citations omitted.) *State* v. *Garcia*, supra, 178 Conn. App. 566–67.

Thereafter, "the Connecticut state treasurer, brought an action against McGuire and the sureties on his bond to collect the debt on the recognizance. . . . The sureties claimed they were excused by acts of both the law and the obligee." (Citations omitted.) Id., 567. Our Supreme Court concluded that the sureties were not entitled to be relieved from their obligations on the bond, and the sureties appealed to the United States Supreme Court. *Taylor* v. *Taintor*, supra, 83 U.S. 369.

In affirming our Supreme Court's judgment, "[t]he United States Supreme Court provided examples of what would satisfy each of the common-law conditions of the *Taylor* rule. An act of God occurs when the bonded defendant 'dies before the day' on which he must appear. . . . An act of the obligee, or the party protected by the bond, which is the state, occurs when the state does something that makes it impossible for the defendant to appear in its courts, such as abolishing the court in question without qualification. . . . The third condition, an act of law, arises when the state protected by the bond takes custody of the defendant and then surrenders his custody to another state, thereby exercising control of the defendant in such a way as to make compliance with the bond impossible." (Citations omitted.) *State* v. *Garcia*, supra, 178 Conn. App. 567. "Because Connecticut had not abolished the court in which McGuire was required to appear, the court in *Taylor* focused on the third condition and stated that good cause cannot exist as an act of law when McGuire voluntarily removed himself from Connecticut by crossing the border into New York. . . . There is a distinction between an act of the law proper and the act of the [criminal defendant], which exposes him to the control and action of the law. While the former exonerates, the latter gives no immunity." (Citation omitted; internal quotation marks omitted.) Id., 567–68.

The court then rejected the sureties' argument "that the case fell into the act of law condition because even though McGuire left Connecticut of his own volition, an act of law rendered his appearance impossible due to the lawful arrest and transfer of McGuire to Maine as a result of the cooperation between authorities in New York and Maine. . . . In rejecting this argument, the court stated that it considered New York and Maine 'strangers' to the bond agreement and held that an act of law that makes it impossible for the criminal defendant to appear must derive from the protected state's action, in other words, Connecticut's action, which did not occur in *Taylor*." (Citation omitted.) Id., 568.

In *State* v. *Sheriff*, supra, 301 Conn. 622, our Supreme Court made clear that the *Taylor* rule remains the proper legal test for determining good cause under Practice Book §38-23. In *Sheriff*, the plaintiff in error claimed that the trial court improperly denied its petition to release it from its obligations on surety bail bonds, which had been "ordered forfeited after the principal on the bonds, David Sheriff, the criminal defendant, failed to appear for trial." Id., 618. Specifically, the plaintiff in error argued that there was good cause to release it of its obligations pursuant to §38-23 because, inter alia, it made substantial efforts to locate Sheriff in Jamaica and the state declined to initiate extradition proceedings. Id., 627.

Our Supreme Court rejected the plaintiff in error's invitation to revisit and expand the *Taylor* rule's criteria for good cause. See id., 622 and n.4. Instead, the court applied the *Taylor* rule to the plaintiff in error's claim and held that "the trial court properly concluded that [the plaintiff in error] was not entitled to relief because none of the facts on which [the plaintiff in error] relies prevented Sheriff from appearing for trial; nor do they prevent Sheriff from returning to this jurisdiction. First, none of these facts implicates an act of God. Second, Sheriff's failure to appear at trial and his continued absence from the jurisdiction did not result from any

act of the state. The record demonstrates that Sheriff wilfully fled to Jamaica two days prior to his trial date and has not since returned. No act of the state compelled Sheriff to flee, and no act of the state is preventing Sheriff from returning to this state to stand trial. There is absolutely no evidence to demonstrate that Sheriff's failure to appear or his continued absence from this state is the result of anything but his own will. Moreover, even if we assume that the chief state's attorney could have extradited Sheriff from Jamaica, in the absence of any promise by the chief state's attorney that he would seek extradition of Sheriff in the event that he fled, the chief state's attorney had no obligation to [the plaintiff in error] to extradite Sheriff from Jamaica in order to fulfill the obligations that [the plaintiff in error] willingly undertook. As one court has observed, [t]he state is not the surety's surety. . . . Finally, no law has prevented Sheriff from appearing for trial. Although it is true that the law prevents [the plaintiff in error] from apprehending Sheriff in Jamaica in the absence of an extradition order, nothing in the operation of the law has prevented Sheriff from appearing at trial or returning to this jurisdiction. The fact that [the plaintiff in error] cannot compel Sheriff to return to this state so that [the plaintiff in error] can fulfill its obligation is primarily the result of Sheriff's decision to flee to Jamaica, and [the plaintiff in error] must accept the consequences of that decision." (Citation omitted; internal quotation marks omitted.) Id., 627–28; see also *State* v. *Garcia*, supra, 178 Conn. App. 572 (concluding that "[a criminal defendant] voluntarily leaving the United States for Peru . . . does not meet the act of law condition under the *Taylor* rule because Connecticut, the protected state, was not responsible for making his compliance with the bond impossible").

It is clear, therefore, that the *Taylor* rule remains the appropriate test for determining good cause under Practice Book § 38-23. Applying the *Taylor* rule to the present case, we conclude that the trial court properly determined that Aces failed to establish good cause for

releasing it from its surety obligations because the state's refusal to enter the defendant's rearrest warrant into the NCIC database does not constitute an act of law for purposes of that rule. As our Supreme Court explained in *Sheriff*, an act of law occurs "[i]f the principal is arrested in the [s]tate where the obligation is given and sent out of the [s]tate by the governor, upon the requisition of the governor of another [s]tate . . . ." (Internal quotation marks omitted.) *State* v. *Sheriff*, supra, 301 Conn. 624. In the present case, the defendant's presence in Arizona resulted not from an act of the state but, rather, from his own volition. Aces has offered no evidence to indicate that the defendant was arrested in Connecticut and sent out of this state by the governor. When an "accused's own actions cause his absence at trial . . . sureties . . . [are] not entitled to release from their obligation." Id. Moreover, there is no law preventing the defendant from voluntarily returning to this state.

Because the state has neither removed the defendant from the state nor prevented him from appearing in court, Aces has not established that the defendant's failure to appear is the result of an act of law for purposes of the *Taylor* rule. Accordingly, we conclude that the trial court did not err in concluding that Aces failed to establish good cause under the *Taylor* rule.[4]

B

Next, we turn to Aces' claim that it established good cause because the state would not "furnish the

[4]Although the law governing bail bonds and their forfeiture differs from state to state, we note that other jurisdictions similarly have rejected the claim that a state's failure to place an arrest warrant into the NCIC database constitutes grounds to release a surety from its bond obligation. See, e.g., *People* v. *Diaz*, 862 P.2d 1031, 1032 (Colo. App. 1993) ("there is no merit in sureties' claim that the lack of an entry on the national crime computer system made it impossible for them to perform their obligations on the bond"); *State* v. *Flores*, 88 Haw. 126, 132, 962 P.2d 1008 (App. 1998) (concluding that state's failure to enter bench warrant information into NCIC database did not constitute act or omission of obligee to release bail bond company on its surety bond obligation); *State* v. *Locklear*, Docket No. COA23-1044, 2024 WL

conditions precedent to ever allow [it] to establish the circumstances that would lead to relief [under] § 54-65c." In 2011, after the issuance of the decision in *Sheriff*, the legislature enacted § 54-65c, which "expanded the common-law definition of good cause."[5] (Internal quotation marks omitted.) *State* v. *Garcia*, supra, 178 Conn. App. 566. We are not persuaded.

We begin with the appropriate standard of review. "The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law and our review, therefore, is plenary." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 629, 882 A.2d 98, cert. denied, 276 Conn. 924, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 925, 888 A.2d 92 (2005); see also *State* v. *Agron*, 323 Conn. 629, 633–40, 148 A.3d 1052 (2016) (interpreting § 54-65c and concluding, after employing plenary standard of review, that plaintiff in error did not meet statute's requirements).

Section 54-65c provides in relevant part: "A court shall vacate an order forfeiting a bail bond and release the professional bondsman, as defined in section 29-144, or the surety bail bond agent and the insurer, as both terms are defined in section 38a-660, if *(1) (A) the principal on the bail bond (i) is detained or incarcerated (I) in another state, territory or country, or (II) by a federal agency, or (ii) has been removed by United States Immigration and Customs Enforcement, and (B) the professional bondsman, the surety bail bond agent or the insurer provides satisfactory proof of such detention, incarceration or removal to the court and the state's attorney prosecuting*

3267172, *5 (N.C. App. July 2, 2024) (decision without published opinion, 902 S.E.2d 746) (concluding that trial court exceeded its authority to set aside forfeiture as outlined by statute when it vacated forfeiture on ground that state had not placed defendant's arrest warrant into NCIC database).

[5] Section 54-65c provides additional conditions that would vacate a forfeiture order. This court has emphasized, however, that, "[f]or cases not within the statute, the three common-law conditions of the *Taylor* rule, reaffirmed in *Sheriff*, remain binding precedent." *State* v. *Garcia*, supra, 178 Conn. App. 566 n.14.

*the case, and (C) the state's attorney prosecuting the case declines to seek extradition of the principal . . . ."* (Emphasis added.) Because the three conditions set forth in §54-65c are phrased in the conjunctive, it is clear that a court may vacate an order forfeiting a bail bond and release a professional bail bondsman pursuant to §54-65c only if all three of the conditions are satisfied. See *Afkari-Ahmadi* v. *Fotovat-Ahmadi*, 294 Conn. 384, 393–94, 985 A.2d 319 (2009) (reaffirming " 'significance in the use of the word "and" between . . . two stated conditions' " to show that both conditions must be met); *Penn* v. *Irizarry*, 220 Conn. 682, 687, 600 A.2d 1024 (1991) ("[t]he use of the conjunctive, 'and,' indicates that both conditions must be fulfilled").

In the present case, Aces failed to establish good cause under §54-65c because it neither alleged nor proved that the defendant had been detained or incarcerated in another state. On the contrary, the entire premise of Aces' claim is that the state's refusal to enter the defendant's rearrest warrant into the NCIC database is the very thing that is preventing the defendant from being detained and incarcerated in Arizona for the pending charges here in Connecticut. For purposes of §54-65c, the terms "detained or incarcerated" mean that a defendant is in the custody of a governmental entity. *State* v. *Agron*, supra, 323 Conn. 639–40.

Our Supreme Court's decision in *State* v. *Agron*, supra, 323 Conn. 629, is instructive. In *Agron*, the plaintiff in error brought a writ of error claiming that the trial court improperly denied its motion to release it of its obligation on a surety bail bond pursuant to §54-65c after the criminal defendant, Angel Agron, failed to appear in court and fled to Puerto Rico. Id., 630–31. In support of its motion to release it of its bond obligation, the plaintiff in error submitted evidence that the state had declined to initiate extradition proceedings against Agron even though he had been located by bail enforcement agents in Puerto Rico and made aware of his warrant for failure to appear in Connecticut. Id., 632. Our Supreme Court

rejected the plaintiff in error's claim, concluding that "the word 'detained' as used in [§ 54-65c] . . . require[s] custody by a governmental entity." Id., 639. The court reasoned that, because "[i]t [was] undisputed that Agron was not incarcerated or detained by any governmental entity . . . the [plaintiff in error] did not meet the requirements of § 54-65c." Id., 640.

Although, in the present case, there is no dispute that the defendant had not been detained or placed in custody in Arizona at the time Aces moved to be relieved of its obligations under the surety bonds, Aces nevertheless argues that, "by refusing to place [the defendant's rearrest warrant] in NCIC . . . [the state] was . . . already declining to extradite him, as there would be no possibility of extradition without the precedent ability of the state of Arizona to first apprehend [the defendant] under the mechanism of the NCIC system." Aces' interpretation ignores the clear and plain language in § 54-65c stating that a principal must be detained or incarcerated in order for the statute to apply. Moreover, the statute makes no mention whatsoever of the NCIC database.

Aces' claim on appeal amounts to an invitation to read into § 54-65c an additional, alternative ground that would entitle a professional bail bondsman to the relief afforded under that statute upon a showing that the state has declined to enter a defendant's rearrest warrant into the NCIC database. Such an interpretation would be contrary to well settled tenets of statutory construction requiring us to interpret a statute according to its plain language and to avoid reading into a clearly expressed statute provisions or requirements not expressed in the language of the statute. "When interpreting statutes, we afford statutory language its plain and ordinary meaning and refrain from reading into statutes provisions that are not clearly stated . . . ." (Internal quotation marks omitted.) *State* v. *Guadalupe*, 66 Conn. App. 819, 827, 786 A.2d 494 (2001), cert. denied, 259 Conn. 907, 789 A.2d 996 (2002); see also *Dusto* v. *Rogers Corp.*, 222 Conn. App. 71, 110, 304 A.3d 446 (2023) ("[i]n the absence of such

an explicit requirement, we . . . decline to read such a requirement into [the] statute"), cert. denied, 348 Conn. 939, 307 A.3d 274 (2024); *Gamez-Reyes* v. *Biagi*, 136 Conn. App. 258, 274, 44 A.3d 197 ("We are bound to interpret legislative intent by referring to what the legislative text contains, not what it might have contained. . . . We will not read into clearly expressed legislation provisions which do not find expression in its words." (Internal quotation marks omitted.)), cert. denied, 306 Conn. 905, 52 A.3d 731 (2012).

On the basis of the foregoing analysis, we conclude that the trial court did not err in concluding that the plaintiff failed to establish good cause under § 54-65c. Accordingly, we reject Aces' claim.

## II

Aces next claims that the trial court improperly concluded that it lacked authority to order the state to enter the defendant's rearrest warrant into the NCIC database. We disagree.

We begin by setting forth the applicable standard of review. Whether the court has the legal authority to issue an order is a question of law subject to plenary review. See, e.g., *State* v. *Abushaqra*, 164 Conn. App. 256, 264, 137 A.3d 861 (2016). Moreover, to the extent that Aces' claim requires us to interpret the statutes pertaining to the NCIC database, that issue of statutory interpretation is likewise subject to our plenary review. See, e.g., *Airey* v. *Feliciano*, 352 Conn. 639, 646, 338 A.3d 344 (2025).

Aces argues that the court had the authority to order the state to enter the rearrest warrant into the NCIC database pursuant to § 29-164f, which is the statute by which our legislature entered into and enacted into law the National Crime Prevention and Privacy Compact (compact).[6] Although Aces acknowledges that the "authority of the trial court to order the state to initiate

---

[6] "This [c]ompact organizes an electronic information sharing system among the federal government and the states to exchange criminal history records for noncriminal justice purposes authorized by federal or

extradition is unspecified in § 29-164f," it argues that "it is nonetheless clear that the trial court holds the power to order items into [the] NCIC [database]."

Section 29-164f, however, includes no language authorizing a court to require a law enforcement agency to enter a rearrest warrant into the NCIC database. It is well established that, "[w]hen a court interprets [a statute], it cannot . . . supply additional terms to change the meaning of the provision at issue." (Internal quotation marks omitted.) *PJM & Associates, LC* v. *Bridgeport*, 292 Conn. 125, 138, 971 A.2d 24 (2009). "We are not in the business of writing statutes; that is the province of the legislature. Our role is to interpret statutes as they are written. . . . [We] cannot, by [judicial] construction, read into statutes provisions [that] are not clearly stated." (Internal quotation marks omitted.) *Rider* v. *Rider*, 210 Conn. App. 278, 288, 270 A.3d 206 (2022).

If our legislature had intended to vest in trial courts the authority to order law enforcement agencies to enter rearrest warrants into the NCIC database upon a defendant's failure to appear in court, it easily could have done so expressly.[7] Indeed, there are numerous instances

state law, such as background checks for governmental licensing and employment." General Statutes § 29-164f (a).

[7] We note that other jurisdictions have enacted legislation expressly providing that a rearrest warrant shall be entered into the NCIC database. See Cal. Penal Code § 980 (b) (Deering 2023) ("The clerk shall require the appropriate agency to enter each bench warrant issued on a private surety-bonded felony case into the [NCIC]. If the appropriate agency fails to enter the bench warrant into the [NCIC], and the court finds that this failure prevented the surety or bond agent from surrendering the fugitive into custody, prevented the fugitive from being arrested or taken into custody, or resulted in the fugitive's subsequent release from custody, the court having jurisdiction over the bail shall, upon petition, set aside the forfeiture of the bond and declare all liability on the bail bond to be exonerated."); Cal. Penal Code § 1196 (b) (Deering 2023) (same); Kan. Stat. Ann. § 22-2807 (a) (Cum. Supp. 2025) ("If a defendant fails to appear as directed by the court and guaranteed by an appearance bond, the court in which the bond is deposited shall declare a forfeiture of the bail and issue a warrant for the defendant's arrest. If the defendant is charged with a felony offense, the sheriff shall enter such warrant into the national crime information center's index within 14 days of issuance of the warrant and, upon request,

in which our legislature has expressly required that information be entered into the NCIC database or that a person or agency take some other action with respect to that database. See, e.g., General Statutes § 14-145 (b) (3) (requiring identification numbers of towed vehicles be entered into NCIC database); General Statutes § 17a-8b (requiring Department of Children and Families to report missing or abducted child to NCIC); General Statutes § 29-1i (c) (requiring entry of information relating to missing adult person into NCIC database); General Statutes § 54-63c (e) (requiring law enforcement or probation officers to check NCIC database before releasing arrestee or setting bond). The absence of similar language requiring the state to enter rearrest warrants into the NCIC database or authorizing courts to order law enforcement agencies to enter rearrest warrants into the NCIC database following a defendant's failure to appear for a court appearance is strong evidence that the legislature did not intend to vest courts with such authority. See *Rubin* v. *Brodie*, 228 Conn. App. 617, 646, 325 A.3d 1096 (2024) ("[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" (internal quotation marks omitted)).[8]

We conclude that the trial court properly determined that it lacked the authority to order the state to enter

the court shall make a copy of the warrant available to a compensated surety who deposited the bond on behalf of the defendant."); La. Code Crim. Proc. Ann. art. 331 (G) (2017) (permitting surety to request rearrest warrant be entered into NCIC database when authorized); R.I. Gen. Laws § 12-13-16 (b) (Cum. Supp. 2021) (bail forfeiture may not be initiated until forty-five days following entry of rearrest warrant into NCIC database); Tenn. Code Ann. § 40-11-139 (d) (1) (2025) (requiring entry of rearrest warrant related to felony charges and class A and B misdemeanors that are violent or sexual in nature entered into NCIC database). Connecticut has not adopted similar legislation. See General Statutes § 54-65a.

[8] The plaintiff further argues that the trial court's authority to order rearrest warrants into the NCIC database is derived from its inherent bail authority. Although it is true that the trial court retains jurisdiction over the defendant to ensure compliance with conditions of release

the defendant's rearrest warrant into the NCIC database. Accordingly, the trial court properly denied Aces' motion for order.

The writ of error is denied.

In this opinion the other judges concurred.

---

and, therefore, has authority to set and revoke bail; see *State* v. *Ayala*, 222 Conn. 331, 346–47, 610 A.2d 1162 (1992); *State* v. *Marro*, 68 Conn. App. 849, 859, 795 A.2d 555 (2002); see also *State* v. *Bates*, 140 Conn. 326, 330, 99 A.2d 133 (1953); and to order the forfeiture of bonds and to issue rearrest warrants or capiases; see General Statutes § 54-65a; it does not follow that the relevant statutes also vest in courts the entirely separate and unrelated authority to order law enforcement agencies to enter rearrest warrants into the NCIC database.